Argued March 9, decided April 20, 1909.

## DIETZEL v. CONROY.

[101 Pac. 215.]

JUDGMENT—DEFAULT—VACATING GROUNDS.

1. Under Section 103, B. & C. Comp., authorizing the court in its discretion to relieve against a decree taken by a party through his mistake, inadvertence, surprise, or excusable neglect, even if the attorneys agreed to postpone the argument on a demurrer to the complaint, if defendant's attorney thereafter told plaintiff's attorneys that he intended to abandon the case because his fees had not been paid, and that plaintiff could try the suit any time he desired, the agreement to postpone was thereby terminated, and the trial court properly refused to set aside a default decree for plaintiff taken upon the trial of the demurrer before the time to which argument thereon was postponed by the agreement.

JUDGMENT—VACATING—HEARING—SUFFICIENCY OF EVIDENCE.

2. On motion to vacate a default judgment for plaintiff on the ground that counsel had agreed to postpone argument on a demurrer, affidavits *held* to justify a finding that defendant's attorney abandoned the case because he doubted whether his fee would be paid, and told plaintiff's counsel to try the demurrer at any time he desired.

From Crook: WILLIAM L. BRADSHAW, Judge.

Action by H. F. Dietzel against S. P. Conroy and another. From an order denying a motion to set aside

a default decree for plaintiff and to permit an answer, defendant named appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Enoch B. Dufur.*

For respondent there was a brief over the names of *Messrs. Menefee & Wilson,* with an oral argument by *Mr. Frank Menefee.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is an appeal by the defendant S. P. Conroy from an order denying a motion to set aside the decree rendered herein, and to permit an answer to be filed. H. F. Dietzel commenced this suit in the circuit court for Crook County to secure from Conroy a dissolution of a partnership, and to obtain from the Madras Milling & Mercantile Company a part of its capital stock, which was to have been issued in payment of the goods of the firm that were sold and delivered to it.

The complaint states that, in order to effect a settlement of the partnership accounts, Dietzel and Conroy sold and delivered the property of the firm to the corporation for a consideration of about $6,000, which, when ascertained, was to be evidenced by capital stock of the company of the par value of the merchandise, but that the stock was never delivered nor was a full settlement therefor ever made; that Conroy made false entries in the partnership books, and fraudulently withdrew money from the firm, whereby it became indebted to the plaintiff in the sum of $5,967.76 in excess of the amount to which Conroy is entitled; that Conroy is insolvent, in consequence of which the plaintiff is liable for an outstanding indebtedness against the firm of $285; that the value of the goods so sold and delivered being insufficient, after the firm debts are paid from the proceeds thereof, to discharge the plaintiff's demand, he is entitled to receive the entire stock specified.

Conroy, alone appearing, challenged the sufficiency of the complaint, in that it did not constitute a cause of suit, and that there was a misjoinder of parties defendant; but the demurrer was overruled October 15, 1906, and, no answer or other pleading having been filed, a decree was rendered three days thereafter as prayed for by the plaintiff.

Conroy on April 15, 1907, tendered a verified answer and moved to set aside the decree, and in support of the application filed his affidavit, which contains an exhaustive review of his dealings with the plaintiff and with the corporation. Much of the matter thus detailed will be omitted, and reference will be made only to such parts of the sworn declaration as apparently explain the failure to file an answer within the time required. The affidavit states that, after the goods were secured by the corporation, it became financially involved, whereupon R. L. Sabin took possession of all its property for the purpose of liquidating its obligations; that, conspiring with Dietzel, Sabin caused the sheriff of Crook County, without authority of law, to eject the affiant from the store of the corporation which he unlawfully closed; that they wrongfully persuaded that officer falsely to arrest and imprison the affiant, for the purpose of intimidating him and causing him to leave the county, whereby they were enabled to convert such property to their own use, and to his ruin; that, in order to protect his interests, he retained competent counsel who interposed the demurrer mentioned, and who, after Sabin had taken possession of such property, received from plaintiff's attorneys a letter, of which the following is a copy, to-wit:

"The Dalles, Oregon, April 28, 1906.
"A. King Wilson, Atty. at Law, Portland, Oregon.
"Dear Sir: Referring to the case of Dietzel v. Conroy, will say that from what I can find out here there will probably not be anything left, or at least can say it is likely there will (not) be anything left of the property

of the Madras Milling & Mercantile Company over which to litigate; and the question is, do you wish to have the case stand as it is until we see whether we have anything to fight over, or go ahead and have it tried out? This being an equity case, I presume nothing further than preliminary matters would be disposed of at the coming term of court, and I thought that if you were not going to Prineville anyway, we might arrange to let the matter stand over until the next term of court and see what the outcome would be. Of course, you know I will have to go to Prineville anyway, and if you are there too we might as well dispose of the demurrer or any other preliminary motion with a view to getting the case at issue, as it would not be a great extra expense; but if Mr. Conroy is to be to the expense of sending you up there, why I am willing to make it so that he will be saved that expense for the present. Awaiting your further answer, I am,

"Yours very truly,

[Signed]                                      "Menefee & Wilson."

Conroy further deposed that a regular term of the circuit court for Crook County was held at Prineville in May, 1906, at which session counsel for the respective parties were in attendance, and it was then mutually understood by them, that the demurrer referred to should remain undisposed of until Sabin had sold sufficient goods of the corporation to enable him to pay its debts; that affiant was informed of such understanding, and assured that nothing would be done in this suit to his prejudice without notifying his counsel; that, relying upon such information and believing the assurance, affiant accepted employment at Victoria, British Columbia, and that his attorneys were not notified, nor did he know, that the demurrer had been overruled or that the decree had been taken until February, 1907, when he returned to Oregon. Conroy's sworn declaration is corroborated by the affidavits of his then attorneys, A. King Wilson and O. A. Neal, who severally deposed that it was his understanding that no further action would be taken in this suit without notice, and that no intimation

that the demurrer had been overruled was received until some time after the decree was rendered.

Frank Menefee, one of plaintiff's attorneys, filed an affidavit wherein he states that after carefully computing the indebtedness of the corporation, and ascertaining the value of its assets, it appeared to him that upon the payment of its obligations there would be but little of its property remaining, and, based upon such estimate, he wrote Conroy's attorney as hereinbefore indicated; that such letter contains the only understanding or agreement ever attempted to be made between counsel for the parties, except that at Prineville in May, 1906, affiant conferred with A. King Wilson with reference to having the judge pass upon the demurrer in vacation; that, after nearly all the property had been sold, affiant estimated that, upon the payment of the debts of the corporation, a few hundred dollars would probably remain, thereby necessitating a trial of this suit, and, having seen Mr. Wilson in the summer of 1906, he informed him of these facts and inquired what disposition he expected to make of the demurrer, and was informed by Conroy's attorney that he had never received any fee in the case, and that his client, having had some trouble in Portland, had gone to Victoria and might not return; and that Wilson further said to affiant that, if he desired to take up the demurrer and to try the case, he could do so whenever he pleased, thereby indicating that he did not desire or expect further to appear in the cause. Menefee's affidavit in respect to what Mr. Wilson said in relation to any further appearance in the cause is corroborated by the sworn declaration of Glen O. Allen.

Dietzel filed an affidavit, to the effect that after possession of the property of the corporation had been taken, to satisfy its debts, Conroy was deposed as one of its officers, and thereafter, at midnight, he unlawfully broke and entered its store with intent to take and carry away therefrom the goods, whereupon he was arrested in the

commission of the act, but escaped from the sheriff and fled from the county.

Based on these affidavits the motion was denied, and, to review the action of the court in this respect, Conroy brings the cause into this court.

1. The statute empowers a court in its discretion to relieve a party from a decree taken against him through mistake, inadvertence, surprise, or excusable neglect. Section 103, B. & C. Comp. Since authority to release a party from an adverse determination of a court is limited to the causes thus enumerated, the question to be considered is whether or not the affidavits submitted by the parties prove that in denying the motion, judicial discretion was abused. In order to justify such conclusion, it must satisfactorily appear that Conroy's default was in consequence of the reasonable reliance of his counsel upon some understanding which had been consummated; that no action would be taken to determine the sufficiency of the complaint until they had been notified thereof. The basis for such accord must be found in the letter which was written to them April 28, 1906, and prior to the term of court that was held at Prineville the following month. An examination of the letter will show that the writer seemed to assume that Conroy's attorney might not attend that term of court, and, in order to avoid the expense which a journey to the county seat of Crook County would incur, plaintiff's counsel expressed a willingness that the determination of the sufficiency of the complaint be deferred until the next term of court, which would convene on the third Monday in October, 1906. Section 2498, B. & C. Comp. It was suggested in the letter, however, that, if the person to whom it was addressed should attend the May term of that court, the demurrer might be disposed of and the cause put at issue. It appears from Menefee's affidavit that Conroy's attorney was at Prineville at that time; but it is evident

that neither counsel then sought to secure a determination of the sufficiency of the complaint. The omission to have any action taken upon the demurrer in May, 1906, gives color to Conroy's sworn assertion that the cause was to remain in abeyance until it could be ascertained whether some of the property of the corporation would remain after the payment of its debts, as to warrant a settlement of the partnership accounts by a revival of the suit, which was until that time to remain dormant.

2. The doubt expressed in Menefee's letter of April 28, 1906, as to whether there would be any property of the corporation left after liquidation of its debts, was in the summer of that year dispelled by the declaration, as evidenced by his sworn statement, to the effect that he informed Conroy's attorney that there would likely be some remainder; and whatever understanding may have been reached from the letter referred to, or from the failure to secure action of the court upon the demurrer in May, 1906—if it be assumed that such "understanding" was equivalent to an agreement to postpone the trial of the cause—that agreement was terminated when, after receiving such information, A. King Wilson replied that he did not expect further to appear in the cause, that he had not been paid anything by his client for the services which he had rendered, and that the plaintiff could try the suit at any time he pleased. This declaration, corroborated as it is by the affidavit of Glen O. Allen, who was present during such conversation, not having been denied by counter affidavit, must be taken as true, thereby proving that the decree was not rendered in consequence of any of the statutory reasons which sanction the relief invoked. Conroys' arrest for breaking into the store of the corporation at midnight after he had been displaced as one of its officers was evidently not prearranged by plaintiff, nor was he apprehended to prevent or dissuade him from defending in this suit. It was quite probable, as a fair inference deducible

from the showing made in the affidavits, that A. King Wilson, Conroy's attorney, not having received any compensation for his services herein, and thinking it problematical whether or not any money could be secured from the property when applied in settlement of the partnership accounts, and because his client had left the State on account of some difficulty in Portland, wisely concluded to abandon the cause; and, having done so at a time when he represented Conroy, no judicial discretion was abused in denying the motion.

It follows that the decree should be affirmed; and it is so ordered.                                          AFFIRMED.